IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENZEL WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-CV-383-MAB |
| | ) |
| JUSTIN SNELL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Defendant Jorden Sparling's motion for summary judgment on the issue of exhaustion (Doc. 129) and Defendants Sparling, Boyd Miles, and Brandon Smith's motion for summary judgment on the merits of Plaintiff's claim (Doc. 134).

### BACKGROUND

Plaintiff Denzel Walker originally filed this civil rights action pursuant to 42 U.S.C. § 1983 in April 2017 (Doc. 1). Counsel was recruited for him in January 2018, and the complaint was amended a number of times. The current operative complaint is the Fourth Amended Complaint, filed on October 30, 2019 (Doc. 108).

Plaintiff alleges that on July 11, 2016 at Menard Correctional Center, he was beaten by a number of correctional officers (Doc. 108). Plaintiff asserted an Eighth Amendment claim for excessive force and/or failure to intervene against Defendants Benjamin Koehn, Lester Lohman, Boyd Miles, Degen Sanders, Brandon Smith, Justin Snell, and Jorden

Sparling, as well as, an Eighth Amendment claim for "cruel and unusual punishment",[1] and state law tort claims for assault and battery (*Id.*).

Jorden Sparling was a late-appearing Defendant in this case; he was not identified as one of the unknown officers until February 2020 (Doc. 120). After he entered the case, he was given an opportunity to file a motion for summary judgment on the issue of exhaustion (Doc. 128). However, discovery on the merits of Plaintiff's claims as to Defendant Sparling was not stayed pending resolution of the exhaustion issue given the age and posture of the case (Doc. 128). The parties were told that the Court would decide the issue of exhaustion as to Defendant Sparling at the same time as the merits-based motions for summary judgment (*Id.*).

Defendant Sparling filed his motion for summary judgment on the issue of exhaustion and memorandum in support on July 7, 2020 (Doc. 129, Doc. 130). Plaintiff filed his response in opposition and memorandum in support on August 24, 2020 (Doc. 138, Doc. 139). He then filed an amended response and memorandum two days later (Docs. 140, 141). After reviewing the parties' briefs, the Court determined there are no issues of fact and a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) is not

---

[1] This claim is as follows: "The Defendants conduct, actions and inactions described in this complaint violated Plaintiff's Eighth Amendment right to be free from Cruel and Unusual Punishment, and Defendants were acting beyond a good faith effort to restore order and acted maliciously and sadistically to inflict unnecessary and wanton pain and deprivation of basic human treatment" (Doc. 108, p. 5). The Court is unsure what type of Eighth Amendment claim Plaintiff is trying to bring (claims of Eighth Amendment violations typically fall into one of four categories: excessive force, failure to protect, deliberate indifference to serious medical needs, and inhumane conditions of confinement) or how it is materially different from his excessive force claim. The Court declines to take any action with respect to this claim at this time and intends to discuss it during pretrial proceedings.

necessary.

Defendants Sparling, Miles, and Smith filed a motion for summary judgment on the merits of Plaintiff's claims and memorandum in support on July 23, 2020 (Doc. 134, Doc. 135).[2] Plaintiff filed his response in opposition on September 5, 2020 (Doc. 146). Defendants did not file a reply brief.

## DEFENDANT SPARLING'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF EXHAUSTION (Doc. 129).

Plaintiff alleges in the complaint that on July 11, 2016, after he was denied access to a crisis team, he flooded his cell and threw water out of his cell on three officers (Doc. 108). He was handcuffed by Lieutenant Benjamin Koehn and Officer Degen Sanders and escorted out of his cell and out the back door of the gallery, where there were a number of officers waiting for him, including Jorden Sparling (Doc. 108). Plaintiff alleges the officers beat him (Doc. 108).

Plaintiff filed a grievance, dated September 10, 2016 and marked it as an emergency, directly with the ARB (Doc. 130-1, pp. 4–7). A stamp indicates that the ARB received the grievance on September 14, 2016 (*see id.*). It appears Plaintiff submitted a second and different version of this grievance to his counselor at Pontiac (*Id.* at pp. 8–15). The counselor responded on September 14, 2016, stating the grievance concerned another institution and should be forwarded to the ARB (*Id.*). A stamp indicates that the ARB received the grievance on September 29, 2016 (*see id.*).

In a letter dated October 19, 2016, the ARB addressed both grievances and

---

[2] Defendants Koehn, Lohman, Sanders, and Snell did not move for summary judgment.

remanded them to the Warden of Menard to review (Doc. 130-1, p. 16). The warden's office received the grievances on October 26th (*Id.* at p. 3; *see also id.* at pp. 11–37). The warden denied the grievances on November 4th and sent themback to the ARB, where they were received on November 15th (*Id.* at p. 3; *see id.* at pp. 3–16). On November 22, 2016, the ARB denied the appeals (*Id.* at p. 1).

The grievances state, in pertinent part, that on July 11, 2016, Plaintiff flooded his cell and the whole gallery (Doc. 130-1, pp. 4, 8, 10). He also "assaulted" three correctional officers (*Id.*). A lieutenant and a tall [correctional officer] came to his cell and told him to cuff up, which he did because they said they would take him to see a crisis team (*Id.*). Instead, they took him out the back door of the four gallery, where there were more correctional officers waiting for him and "they started jumping on me." (*Id.* at p. 5; *see also id.* at pp. 9, 10) He said he fell to the ground and the officers were hitting him in his face, head, and body (*Id.* at pp. 5, 9, 11). As a result of the attack, his right eye was busted open and he also cannot hear out of his left ear anymore (*Id.*). He stated that when the officers saw blood on the floor, they stopped beating him and stood him up to see where he was bleeding from (*Id.*). They cut his clothes off and used them to clean up the blood and then put a jumpsuit on him (*Id.* at pp. 5, 9, 11–12). The lieutenant asked him if he was "done assaulting his staff," and when Plaintiff didn't respond, the lieutenant started punching Plaintiff all over his body (*Id.* at pp. 5, 9, 12). Plaintiff also stated in the grievance that he sent directly to the ARB that he was transferred to Pontiac on September 1, 2016, but prior to his transfer, he submitted three grievances at Menard but he never got any responses (*Id.* at p. 7).

### LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). No hearing is necessary when there is no disputed issue of fact.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems

and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam) (citations omitted). *See also Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) ("The PLRA does not specify what a prisoner must do to exhaust his administrative remedies. Those requirements are found in the law establishing the relevant administrative remedies: state law for state prisons and federal law for federal prisons."). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.*[3] The regulations require, in pertinent part, that a prisoner's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(b). If the offender

---

[3] At the time Plaintiff filed his grievances, the April 2003 version of the grievance procedures was in effect. *See* 27 Ill. Reg. 6285–86 (April 11, 2003) (promulgating the version of 20 Ill. Admin. Code § 504.810 in effect from April 2003 through April 2017). Illinois later amended its grievance procedures, which took effect in April 2017. *See* 41 Ill. Reg. 3909–10 (March 31, 2017) (amending 20 Ill. Admin. Code § 504.810). Throughout this Order, the Court refers to and applies the April 2003 version of the regulations.

does not know the names of individual, he "must include as much descriptive information about the individual as possible." *Id.*

## DISCUSSION

It is undisputed that the grievances went through every step of the grievance process and were thus fully exhausted. However, Officer Sparling argues they are not sufficient to exhaust as to him because Plaintiff failed to identify or describe him in the grievances and also failed to describe any conduct attributable to him (Doc. 108). The Court is unpersuaded by Sparling's arguments.

"A procedural shortcoming," like failing to specifically name each person who is the subject of the grievance, "amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005)). "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox*, 655 F.3d at 721 (citing *Conyers*, 416 F.3d at 585); *see also Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (noting that federal courts will find a plaintiff has exhausted remedies when "the tribunal decides the merits without treating the procedural default as an independent ground of decision" (emphasis added)).

Here, Plaintiff indicated in his grievances that he was beaten by a group of correctional officers (Doc. 130-1, pp. 5, 9, 10). He did not identify any of the officers involved in or present during the alleged beating (*see* Doc. 130-1). In fact, he explicitly

stated, "I do not know any of the COs or Lt. names that was involved" (*Id.* at pp. 5–6). But Plaintiff also did not make any effort to describe them, aside from saying one was a lieutenant and one was a tall correctional officer (*see id.* at pp. 4, 8, 10). He did not even indicate how many officers were involved in the alleged beating (*see* Doc. 130-1). However, Plaintiff's grievances were never rejected because he had not adequately identified or described the officers at fault (*see id.*). Rather, his grievances were accepted and rejected on the merits at every stage of review without any indication from prison officials that they were procedurally deficient (*see id*). Consequently, Officer Sparling cannot now rely on a procedural deficiency in arguing that Plaintiff failed to exhaust. *See Maddox*, 655 F.3d at 722 (rejecting defendant's argument that plaintiff failed to exhaust because he did not name or describe the defendants in his grievance when prison officials at every level address the grievance on the merits without any indication that it was procedurally deficient).

Officer Sparling also argues that Plaintiff failed to describe any conduct attributable to him in the grievance (Doc. 108). Specifically, in the Fourth Amended Complaint, Plaintiff specifically alleged that Officer Sanders kicked him in the butt, which caused him to fall into Officers Smith and Sparling, and Sparling then punched Plaintiff in the stomach (Doc. 108, p. 3). Officer Sparling argues that Plaintiff did not include these same allegations in his grievance and therefore no officials could have been made aware of the accusations against Officer Sparling (*Id.* at p. 5). The Court disagrees.

There is no requirement that the content of the grievance must exactly mirror the allegations in the complaint or contain the same level of detail. Plaintiff alleged in his

grievances that he was beaten by multiple officers in a back stairwell on July 11, 2016. This was sufficient to put prison officials on notice of the gist of his claim. He was not required to include detailed allegations as to how exactly the beating unfolded or what each officer specifically did to harm him.

For these reasons, Officer Sparling's motion for summary judgment on the issue of exhaustion is denied.

## MOTION FOR SUMMARY JUDGMENT ON THE MERITS (DOC. 135)

### Facts

Plaintiff testified that on July 11, 2016, he told the gallery correctional officer that he was feeling suicidal and asked for a crisis team (Doc. 135-4, p. 12; Doc. 135-1, p. 19). When he still had not spoken with a crisis team hours later, he flooded his cell around 2:00 pm (Doc. 135-4, p. 13; Doc. 135-1, p. 19). It ended up flooding the whole gallery (Doc. 135-1, p. 18). When Officer Lohman came to the gallery to assist with the flooding, Plaintiff stuck his arm out the chuckhole of his cell and threw coffee on Lohman (Doc. 135-4, pp. 13–14; Doc. 135-2, p. 1; Doc. 135-1, p. 18). A few minutes later, Plaintiff threw coffee on Officers Smith and Miles (Doc. 135-4, pp. 14–15; Doc. 135-2, p. 1). A few minutes later, Lieutenant Koehn and Officer Sanders went to Plaintiff's cell and told him to cuff up (Doc. 135-2, p. 2). Plaintiff did so because, according to him, they said they were going to get him a crisis team (Doc. 135-4, p. 17; Doc. 135-1, pp. 23–24; *see also* Doc. 135-2, p. 2).

Plaintiff testified that they walked him out the back gate into a hallway and "they jumped on [him]" (Doc. 135-4, p. 19). He said there were a number of officers in the back hallway at the time, some of whom joined in beating him and some who did not (Doc.

135-4, pp. 20, 25; Doc. 135-1, pp. 26–28, 32–35).

According to Defendants, Plaintiff became combative and refused to comply with orders, so Lt. Koehn and Officer Sanders "attempted to gain compliance . . . [by] plac[ing] [Plaintiff] into the wall causing a small laceration above [Plaintiff's] eye" (Doc. 135-2, p. 2). According to Plaintiff, his eye was badly bleeding and he lost some of his hearing in his left ear (*e.g.,* Doc. 135-1, p. 37; *see also* Doc. 135-3, pp. 14–15, 29, 31, 51, 52). It is undisputed that he was taken to healthcare unit, where he was treated for a laceration, and then taken to segregation (*see, e.g.,* Doc. 135-2, pp. 1–3; Doc. 135-3, pp. 14–15).

## Discussion

Officer Sparling argues that Plaintiff failed to provide any evidence or testify that he used unconstitutional force against Plaintiff (Doc. 135, p. 6). He cites to Plaintiff's deposition testimony, where Plaintiff was asked if any correctional officers were present but did not "jump him," and Plaintiff indicated that Defendant Sparling was there but did not further participate (Doc. 135-1, p. 32). In other words, Plaintiff explicitly admitted that Sparling was present but did *not* strike him. Consequently, the Court agrees that Defendant Sparling is entitled to summary judgment on Plaintiff's claims of assault[4] and battery[5] and excessive force (Count 2). And although Defendant Sparling was not

---

[4] Assault involves (1) a threatening *gesture,* or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an *imminent* battery. *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) (citing *Restatement (Second) of Torts* § 29 (1979)).

[5] Battery, "in its simplest terms, is defined as 'the unauthorized touching of the person of another.'" *Wilson v. City of Chicago*, 758 F.3d 875, 879 (7th Cir. 2014) (quoting *Curtis v. Jaskey*, 759 N.E.2d 962, 964 (Ill. App. Ct. 2001)).

directly responsible for the beating, he was allegedly standing idly by during it and therefore remains potentially liable for failing to intervene. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (citations omitted) (In a § 1983 action alleging an Eighth Amendment violation, a defendant officer may be held to account both for his own use of excessive force on the plaintiff, as well as his failure to step forward and prevent the use of excessive force used by his fellow officers, despite a realistic opportunity to do so).

Officer Miles argues "the only evidence on the record" shows that he was not present when Plaintiff alleges force was used against him (Doc. 135, p. 7). And Officer Smith similarly argues that Plaintiff "failed to even claim [he] was specifically present when the force was applied" (Doc. 135, p. 7). These arguments are inaccurate and unconvincing. Plaintiff specifically testified that Miles and Smith were present in the back hallway during the beating (Doc. 135-4, pp. 20, 25; Doc. 135-1, pp. 34–35). Plaintiff's testimony is, of course, "evidence on the record." The fact that Miles wrote in his incident report that he "left the scene" after Plaintiff threw coffee on him, (Doc. 135-2, p. 12), does not somehow negate Plaintiff's testimony and entitle Miles to summary judgment. The Court cannot decide on summary judgment "which party's version of events is more likely true. . . . [S]ummary judgment cannot be used to resolve swearing contests between litigants." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

Officer Miles also argues that Plaintiff "was unable to identify any action by

[Miles] that could constitute unconstitutional force" (Doc. 135, p. 6). Again, the Court is unpersuaded. During his deposition, Plaintiff was asked if he remembered "Miles being back there and jumping you," and Plaintiff responded, "Yes." (Doc. 135-1, p. 34). Plaintiff was then asked if Miles hit him while he was standing up, on the ground, or somewhere in between, and Plaintiff said, "That's too hard for me to remember, but I know he jumped me. . . . He physically did something to me. He physically did something to me that day with the rest of the COs, but I can't remember exactly what he did" (Doc. 135-1, pp. 34–35; *see also* Docs. 68, 96, 108). Later in his deposition, Plaintiff testified that after he was transferred back to Menard, Miles was his gallery officer and told Plaintiff "that he jumped on me because I threw something on him" (Doc. 135-1, p. 37). Furthermore, Plaintiff has repeatedly and consistently said that he was hit, smacked, kicked, punched, etc., by the officers in the back hallway, his face was cut open and bleeding profusely, and his hearing was damaged (all of which has been memorialized in the medical records, in his grievances, in his complaints in this matter, and in his deposition testimony) (*see* Doc. 135-3, pp. 20; Doc. 130-1; Docs. 8, 68, 96, 108; Docs. 135-1; 135-4). Notably, Miles did not submit an affidavit or any other evidence affirmatively denying that he struck Plaintiff (*see* Doc. 135). While Plaintiff's evidence against Miles is certainly not the strongest conceivable evidence, the Court believes it is enough to establish an issue of fact as to whether the Miles made physical contact with Plaintiff of an unconstitutional nature. For these reasons, the motion for summary judgment is denied as to Defendant Miles.

Officer Smith similarly argues that Plaintiff "did not even confirm [Smith]

participated in any action. Plaintiff only broadly stated that all the correctional officers hit him so [ Smith] must have hit him too." (Doc. 135, p. 7). Plaintiff testified that Officer Smith was present in the back hallway during the beating (Doc. 135-4, pp. 20, 25; Doc. 135-1, pp. 34–35). He further testified that, he could not see who was hitting and kicking him while he was on the ground because his eye was bleeding and he was balled up trying to protect himself (Doc. 135-4, pp. 27–32). But Plaintiff also testified that when he was stood up, he saw the correctional officers, including Smith, so "I know [he] punched me" (*Id.* at p. 27). When asked how he knew, he responded, "I know all the CO's back up there jumped on me. It's jail. If you do something to somebody, you've going to say something. They do something to you, they are going to say something." (*Id.* at p. 29). Plaintiff further demonstrated a general awareness as to which officers were involved in the attack versus those who were just present but did not take part in the beating (*see* Doc. 135-1, pp. 32–33). While this is a close call, the Court believes Plaintiff has established an issue of fact and a trier of fact must sort out whether or not Officer Smith used excessive force against Plaintiff.

For these reasons, summary judgment is denied as to Officers Miles and Smith.

## CONCLUSION

Defendant Jorden Sparling's motion for summary judgment on the issue of exhaustion (Doc. 129) is **DENIED.**

Defendants Sparling, Boyd Miles, and Brandon Smith's motion for summary judgment on the merits of Plaintiff's claim (Doc. 134) is **GRANTED in part and DENIED in part.** It is granted as to Defendant Sparling on Plaintiff's claims of excessive force,

assault, and battery and judgment will be entered in Sparling's favor at the close of the case. It is denied in all other respects.

This matter will proceed to trial on the following claims against the following Defendants:

- Excessive force and/or failure to intervene, assault, and battery against Defendants Benjamin Koehn, Lester Lohman, Boyd Miles, Degen Sanders, Brandon Smith, and Justin Snell;

- Failure to intervene against Defendant Jorden Sparling; and

- "Cruel and unusual punishment" against all Defendants.

A status conference to discuss the trial schedule and the utility of a settlement conference will be set by a separate Order.

**IT IS SO ORDERED.**

**DATED: March 29, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**